UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEAN MARIE CAROZZA SUDDER,

                Plaintiff,

-against-

J.P. MORGAN CHASE BANK,

                Defendant.

21-CV-2843 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff brings this *pro se* action, for which the filing fee has been paid, invoking the Court's federal question jurisdiction. She alleges that Defendant "J.P. Morgan Chase Bank" ("JPMorgan") violated her rights in the servicing of her mortgage. For the reasons set forth below, the Court dismisses the complaint for failure to state a claim.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), that it fails to state a claim, *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). But the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

The following facts are taken from the complaint: In 2000, Plaintiff and her husband decided to refinance the mortgage on their house. (ECF 1, at 9.) Plaintiff "wanted to sign every document" that her husband signed "and asked him to find out if this was agreeable to the bank." (*Id.*) When they met with the bank, "[a]ll the documents were prepared for both [of their] signatures." (*Id.*) But "three weeks after the meeting, the bank representatives sent a letter wanting to change the note without any explanation." (*Id.*) Plaintiff and her husband believed that "this was suspicious, ridiculous and crooked that they were trying to change the original agreement (bait and switch) and ignored the letter." (*Id.*) Plaintiff did retain the letter, but the bank representative did not follow-up with any additional letters or phone calls.

In 2008 or 2009, Plaintiff applied for a loan modification several times over a five-year period, and "each time [she] was told that [she] could not be helped because [she] never signed the mortgage documents." (*Id.* at 10.) Plaintiff was unable to locate a copy of the documents she had signed "because they were never sent to [her]." (*Id.*) "[T]hen came a dawning after five

years," and Plaintiff called the bank to request copies of the documents she had signed. (*Id.*)
When Plaintiff received copies of the signed documents, she "discovered someone had forged
the documents; the original note was voided, a second note was scribbled and a third note looked
like the original with [Plaintiff's] name blocked out." (*Id.*) Plaintiff then "ask[ed] to show [the
documents] to a higher authority . . . to prove that [she] did sign the documents," but her request
was denied. (*Id.*)

Seven months after discovering the "forged documents," Plaintiff still had not learned
what had occurred, and her questions regarding her "illegally tampered with" signature had been
"ignored." (*Id.* at 11.) Rather, she "heard lies and words attributed to [her] that [she] never
raised." (*Id.*) In the end, "no one has ever told [Plaintiff] or indicated to [her] that an attempt was
made to try to find out who did this to [her]." (*Id.*)

Plaintiff alleges that "[a]ll [she] ever wanted and applied for was a modification[ ] [and
she] believe[d] [she] had the right to sign those documents in 2001 and the bank agreed." *Id.* She
also alleges that JPMorgan violated: (1) New York State's General Business Law § 349, and Real
Estate Settlement Procedures Act; (2) New York State Penal Law § 170, regarding the "forged
documents"; (3) "U.S. Postal Regulations," also regarding the "forged documents"; and (4) "civil
rights" laws. (*Id.*) For relief, she states: "let a jury decide." (*Id.* at 6.)

According to this Court's records, on November 6, 2014, Plaintiff filed a substantially
similar complaint in which she alleged that JPMorgan foreclosed on her mortgage. *See Carozz-
Sudder v. JPMorgan Chase Bank*, ECF 7:14-CV-8861, 1 (S.D.N.Y. Dec. 30, 2014). Specifically,
Plaintiff alleged that she had: (1) asked her "ex-husband to ask the bank if [she] could sign
everything he signed'" (2) "located the original documents and . . . three notes"; (3) determined

3

that the "bank foreclosed on [her] using the wrong document"; and (4) still possessed the note that she had signed and had been "voided." *Id.* (ECF 1, at 3.)

On December 23, 2014, Plaintiff filed a letter with the court, stating that "a Federal Bankruptcy judge ha[d] addressed [her] complaint, so [she] no longer need[ed] to pursue it myself." (ECF 9.) Judge Vincent Briccetti, the assigned district judge, construed the letter as a request to withdraw the case under Federal Rule of Civil Procedure 41(a)(2), and granted the request. (ECF 10.)

## DISCUSSION

### A. Plaintiff Cannot Seek Criminal Prosecution

Plaintiff alleges that Defendant JPMorgan violated New York State Penal Law § 170 and apparently seeks its prosecution. But Plaintiff cannot initiate in this Court the arrest and prosecution of an entity because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff direct prosecuting attorneys to initiate a criminal proceeding against Defendant because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### B. Plaintiff's Complaint Fails to State a Claim

Because Plaintiff alleges facts suggesting that JPMorgan failed to provide her with the opportunity to modify the terms of her mortgage payments, the Court construes the complaint as asserting claims under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605.

"RESPA is a consumer-protection statute . . . [that] imposes short timeframes for mortgage servicers to respond to potentially detailed inquiries. *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (citing *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624 (2012).

4

Specifically, RESPA requires loan servicers to respond to qualified written requests (QWR) and make appropriate corrections to borrowers' accounts. *See* 12 U.S.C. § 2605. Under RESPA, after receiving a QWR from a borrower, a loan servicer must, within 30 days, "make appropriate corrections in the account of the borrower . . . and transmit to the borrower a written notification of such correction." *Id.* § 2605(e). A servicer also must "provide the borrower with a written explanation or clarification" after conducting any investigation into the QWR. *Id.*

A loan servicing company that "fails to comply with [these provisions] is liable to the borrower." 12 U.S.C. § 2605(f). A RESPA claim must be brought within three years. *See* 12 U.S.C. § 2614.

Here, Plaintiff fails to state a claim under RESPA because she does not allege that JPMorgan failed to respond to her detailed inquiries as a borrower. Rather, she alleges that JPMorgan (1) did not consider her a borrower; (2) relied on forged documents to determine that she was not a borrower; and (3) based on this determination, denied her request to modify her mortgage payments. Thus, this action does not concern JPMorgan's failure to respond to Plaintiff's QWR as a borrower; it concerns Plaintiff's 2001 signing of loan documents – where her signature was not recorded – and the alleged forging of her mortgage documents. As these allegations cannot support a finding that JPMorgan violated RESPA, Plaintiff fails to state a claim showing that she is entitled to relief. *See* Fed. R. Civ. P. 8(a).

Even if Plaintiff could state a claim under RESPA, the complaint demonstrates on its face that the claims are time-barred. Under RESPA, Plaintiff had three years to bring a lawsuit. Assuming that she learned in 2014 of the alleged violation, she waited seven years to file her complaint. Although Plaintiff did file a lawsuit in 2014, this nearly identical lawsuit (without any reference to the first lawsuit or explanation for the seven-year delay) is untimely.

5

## C. Leave to Amend Is Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment as Plaintiff cannot state a federal claim under RESPA, the Court declines to grant Plaintiff leave to amend her complaint.

## D. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## CONCLUSION

Plaintiff's complaint, for which the filing fee has been paid, is dismissed for failure to state a claim. Having dismissed the federal claims over which the Court has original jurisdiction,

the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting.

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

The Clerk of Court is further directed to terminate all motions in this case, including Defendants' motion to dismiss (ECF 10).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: July 1, 2021
New York, New York

    /s/ Laura Taylor Swain
    LAURA TAYLOR SWAIN
    Chief United States District Judge